# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut Corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>JOHN P. PADERTA, an Illinois citizen, and FIFTH THIRD BANK, an Ohio Banking Corporation,<br><br>        Defendants. | No. 10 C 0406<br>Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

Defendant Fifth Third Bank ("Fifth Third") moves to dismiss Travelers Casualty and Surety Company of America's ("Travelers") amended complaint pursuant to 12(b)(6). In its amended complaint, Travelers asserts claims in subrogation for conversion, an accounting, and a constructive trust against Fifth Third. For the following reasons, Defendant's motion to dismiss is granted in part and denied in part.

## I. STATEMENT OF FACTS

Travelers, a surety, is seeking indemnification for payments it made on various defaulted contracts on behalf of Defendant John Paderta ("Paderta") and his company Krahl Construction. On January 20, 2010, Travelers filed a Complaint against Paderta alleging claims for breach of contract, exoneration and *quia timet*, specific performance under an indemnity agreement between Travelers and Paderta, and for a preliminary injunction. Fifth Third then moved to intervene to protect its ability to enforce its own rights under a guarantee agreement entered into between Fifth Third and Paderta. I granted Fifth Third's motion to intervene and ordered that no

collateral posted by Paderta to satisfy his debt to Travelers could be used without further order of the court. I did not assign a priority interest in any collateral. Travelers then filed an Amended Complaint naming Fifth Third as a defendant and adding claims for conversion, an accounting, and for a constructive trust.

John P. Paderta ("Paderta") was the President of Krahl Associates, Inc. d/b/a Krahl Construction ("Krahl"). Krahl was a private general contracting construction firm that was hired by property owners for construction services for public and private construction projects in the states of Illinois and Colorado. Krahl hired various subcontractors who contributed to the construction of the overall projects.

Pursuant to the Illinois Public Construction Bond Act, the Colorado Construction Bond Act, and the Miller Act (collectively, the "Bond Acts"), Krahl was required to obtain payment and performance surety bonds on its projects to guarantee its performance obligations under public contracts, and to ensure payment of subcontractors hired by Krahl on the projects. Krahl obtained the required bonds under the Bond Acts, as well as certain payment and performance bonds pursuant to contracts signed with private property owners. Krahl contracted with Travelers to supply the required payment and performance bonds. As a condition of issuing such bonds, both Krahl and Paderta entered into a General Agreement of Indemnity with Travelers.

Krahl maintained a general demand deposit checking account at Fifth Third. Fifth Third loaned in excess of $6,000,000.00 to Krahl, and pursuant to various Revolving Note Loan Agreements ("Loan Agreements"), Fifth Third was entitled to repayment upon Krahl's default under the terms of the Loan Agreements.

In January 2010, Krahl was raided by the FBI. Krahl ceased operations on January 8, 2010. On that same day, Fifth Third declared Krahl in default of its loan and asserted its right of setoff against funds maintained by Fifth Third in Krahl's demand account to partially settle Krahl's outstanding debt on the loans. Fifth Third setoff $2,720,019.65, which was the entire balance of funds contained in Krahl's checking account.

Travelers asserts that at least $1,442,686.03 of the funds in the demand account was comprised of bonded contract funds which were being held in trust by Krahl. After Fifth Third asserted its right of setoff, Travelers received certain claims on the bonds it issued to Krahl from subcontractors hired by Krahl. Travelers paid some of these claims and seeks indemnification for its losses. Travelers is now subrogated to the rights of Krahl and the subcontractors.

## II. DISCUSSION

Fifth Third moves to dismiss Counts V, VI, and VII on three grounds.[1] First, Fifth Third argues that Travelers had no right as a subrogee at the time Fifth Third asserted its right of setoff, and therefore cannot maintain any action against Fifth Third. Alternatively, Fifth Third argues that even if Travelers can be said to have had rights over the funds setoff prior to any alleged right of subrogation vested, it has not set forth facts sufficient to support its claimed right of subrogation. Finally, Fifth Third argues that the amended complaint insufficiently pleads counts for conversion, an accounting, and constrictive trust.

**A. Travelers Has Rights as a Subrogee.**

Travelers' claims against Fifth Third are made under a theory of subrogation. Subrogation is a method by which "one who has involuntarily paid a debt or claim of another

---

[1] Counts I-IV are asserted against Paderta and are not addressed in this Order.

succeeds to the rights of the other with respect to the claim or debt so paid." *Ritter v Hachmeister*, 356 Ill. App. 3d 926, 930 (Ill App. Ct 2005) (quoting *Dix Mut Ins. Co v. LaFramboise*, 149 Ill.2d 314, 319 (Ill. 1992)). A subrogee is entitled to indemnity only to the extent of "the money actually paid by him to discharge the obligation [] or value of the property applied for that purpose." *American Nat. Fire Ins. Co. ex rel Tabacalera Contreras Cigar Co v. Yellow Freight Systems*, 325 F.3d 924, 935 (7th Cir. 2003).

Fifth Third relies heavily on *Capitol Indemnity Corp v. United States*, 41 F.3d 320, 326 (7th Cir. 1994) for the proposition that Travelers had no right of subrogation to the disputed funds at the time of the setoff. Specifically, Fifth Third states that because it asserted its right of setoff prior to any demand made on Travelers by Krahl's subcontractors, Travelers has no right to the setoff funds.[2] Fifth Third contends that at the time of the setoff, Travelers, as Krahl's surety, had no right in subrogation over the funds; only Krahl and Krahl's subcontractors had any such rights, which went unasserted.

A surety is subrogated to the rights of its principal and its principal's obligees upon performing or paying on the bonds it supplies. However, until a demand is made on the surety, and the surety performs under its obligations, no rights in subrogation exist. *Capitol Indem.*, 41 F.3d at 326. Accordingly, Fifth Third argues that a surety such as Travelers cannot assert rights that arose before it was called to perform under its bonds. In *Capitol Indemnity v. United States*, the Seventh Circuit held that the surety could not assert its rights of subrogation until after the

---

[2] This is supported by the complaint which states that "[a]fter Fifth Third swept the entire amount of funds contained in Krahl Construction's operating business checking account and Krahl Construction ceased operations on January 8, 2010, Travelers has received numerous claims against the payment bonds and performance bonds, including but not limited to claims from subcontractors."

4

contractor was declared in default on the project, and a claim had been made on the surety. 41 F.3d 320, 325 (7th Cir. 1995). There, a surety brought an action challenging a federal tax levy against progress payments due to a contractor for the contractor's unpaid federal taxes. The IRS instructed the employer not to pay the construction company, but instead to send all funds to the IRS. *Id*. at 323. The construction firm defaulted on completing the project and the employer demanded that the surety perform on its bonds and complete the project. The surety subsequently filed suit against the government challenging the levy arguing that the contractor did not have an interest in the progress payment, and seeking a declaration that its rights were superior to those of the United States. The Seventh Circuit was left to determine whether it was the contractor, or another entity, that held an interest in the progress payment at the time of the IRS lien.

The subcontractors did not have an interest in the progress payment because they failed to perfect their lien, and therefore "forfeited their inchoate statutory lien." *Id*. at 325. As to the surety, the Court found that no interest in the contract proceeds arose until the contractor had actually defaulted. *Id.* Importantly, the Seventh Circuit recognized that by the time the surety asserted its right of subrogation, there were no claims to be subrogated to – "the subcontractors had lost their potential interest by failing to file notices of lien, [and] B&H [the contractor] had had its property subjected to the IRS lien." *Id.* at 326.

In *Capitol Indemnity*, the subcontractors failed to perfect the liens granted to them by the Illinois Mechanic's Lien Act. Indeed, the Seventh Circuit noted that the rights of the subcontractors were important because "if they originally had a valid claim to the progress payment, the IRS' attempted lien on the entire sum was unlawful. Moreover, CIC as surety

succeeded to any rights the subcontractors had under the theory of equitable subordination." *Id.* at n. 3. Similarly, here, if the subcontractors had a valid right to the trust funds held by Fifth Third, Travelers is accordingly properly subrogated to those rights.

According to the complaint, the subcontractors paid by Travelers have a valid and enforceable lien in the Fifth Third funds in accordance with Section 21.02 of the Illinois Mechanics Lien Act and C.R.S. Section 38-26-109. Accordingly, when Travelers paid the subcontractors, it stepped into the shoes of the subcontractors and became subrogated to their rights. Here, unlike *Capitol Indemnity*, the subcontractors have a valid interest in the funds set off by Fifth Third. Accordingly, Travelers is properly subrogated to the subcontractors' claims. Though it is true, as Fifth Third highlights, that a surety has an unperfected interest in proceeds until there is actual default, here, because the subcontractors held a valid right to the Fifth Third funds, Travelers assumed the rights of the subcontractors who *did* have a valid interest in the Fifth Third funds in accordance with the statutory trust.

**B. Travelers Has Alleged It Is Entitled To The Rights Of A Subrogee.**

Next, Fifth Third argues that even if Travelers can be said to have rights over the setoff funds, it cannot satisfy its requirements as a subrogee. Pursuant to Illinois law, to establish equitable subrogation, a surety must allege: (1) an obligation of its principal to pay another; (2) failure of the principal to perform that obligation; (3) rights in another party arising from the principal's failure to perform; and (4) performance by the surety. *See Am. Nat. Bank and Trust Co. of Chi. V. Weyerhaeuser Co.*, 692 F.2d 455, 461-63 (7th Cir. 1982); *Restatement of Security*, § 141 Subrogation (1941). Fifth Third contends that Travelers has not alleged sufficient facts to meet these requirements. I disagree.

6

Travelers specifically alleges that Krahl hired numerous subcontractors to perform on projects located in Illinois and Colorado. Travelers also alleges that Krahl abandoned the bonded contracts and failed to pay its subcontractors, constituting acts of default under the projects' contracts, subcontracts, and the indemnity agreement with Travelers. Further, Travelers contends that the subcontractors had a cause of action against Krahl (and now Fifth Third) to recover the contract funds paid by various project owners to Krahl which were owed to respective subcontractors. Finally, Travelers asserts that Krahl did not pay its subcontractors; because Krahl failed to pay the subcontractors for the work they completed, Travelers was legally obligated to pay the claims of the subcontractors. These facts satisfy the requirements pursuant to Illinois law.

In its complaint, Travelers alleged that funds were wrongfully setoff by Fifth Third because such funds constituted trust funds under the Illinois Mechanics Lien Act and the Colorado Bond Act, as well as Fifth Third's Indemnity Agreement.[3] At this stage, these facts are all that is required to give Fifth Third "fair notice of what the plaintiff's [subrogation] claim is and the grounds upon which it rests." *Safeco Ins. Co. v. Wheaton Bank & Trust Co.*, No. 07 C 2397, 2009 WL 2407740, at *2 (N.D. Ill. Aug. 4, 2009).

---

[3] Fifth Third's Commercial Security Agreement with Krahl excludes trust funds from Fifth Third's right of setoff against Krahl:
> **RIGHT OF SETOFF**: To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. **However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law.**

### C. Travelers Has Stated A Claim For Conversion In Count V.

Fifth Third argues that Travelers' cannot assert a claim for conversion because a bank deposit is not property subject to conversion. Conversion is an unauthorized act which permanently deprives an owner of his right to property. *In re Farbman*, 244 B.R. 135, 141 (Bankr. N.D. Ill. 2000). A bank account, however, is not property which is subject to conversion. "A bank deposit is a chose in action or debt. It is an intangible right, not specific property owned by the depositor or the successor trustee. Illinois follows the common law rule which did not recognize an action for conversion of intangible rights." *In re Oxford Marketing, Ltd.*, 444 F.Supp. 399, 404 (N.D. Ill. 1978). Despite this general rule, the Illinois Supreme Court and the Seventh Circuit have recognized that a claim can be stated for conversion of money if the sum in question constitutes "specific chattel." *In re Thebus*, 483 N.E.2d 1258, 1260 (Ill. 1985); *Horbach v. Kaczmarek*, 288 F.3d 969, 978 (7th Cir. 2002). Though such money need not be "segregated or earmarked," it must at least be "a specific fund or specific money in coin or bills" or "determinate amount and identifiably distinct." *Safeco Ins. Co. v. Wheaton Bank & Trust Co.*, No. 07 C 2397, 2009 WL 2407740, at *3 (N.D. Ill. Aug. 4, 2009) (internal citations omitted); *Roderick Development Investment Co., Inc. v. Community Bank of Edgewater*, 668 N.E.2d 1129, 1134 (Ill. App. Ct. 1996).

"[W]hen money is deposited with a bank, title to it passes and the bank becomes a debtor to the extent of the deposit; and to that extent, the depositor becomes a creditor." *Sutherland v. O'Malley*, 882 F.2d 1196, 1200 (7th Cir. 1989) (quoting *Mid-City Nat'l Bank v. Mar Bldg. Corp.*, 339 N.E.2d 497, 502 (1975)). As established by the Illinois Supreme Court, "an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay." *In re*

8

*Thebus*, 483 N.E.2d at 1261. "[T]he general rule is that conversion will not lie for money represented by a general debt or obligation." *Id*. Accordingly, bank funds typically cannot be the basis for an action in conversion, even when held in trust for a third party. *Safeco Ins. Co.*, 2009 WL 2407740 at *3; *Katz v. Belmont Nat'l Bank of Chi.*, 491 N.E.2d 1157, 1159 (Ill. 1986). However, when bank account funds are specifically identifiable from funds constituting general debt, a conversion action can be maintained. *Safeco Ins. Co.*, 2009 WL 2407740 at *3. Deposits are separable from the general debt owed to an account holder when the deposits are identifiable and issue from an outside source. *Id.*; *Roderick Development Investment Co., Inc.*, 668 N.E.2d 1134 at 1129.

Travelers has identified specific deposits made to Krahl's Fifth Third bank account, and sums certain that were to be held in trust. Specifically, Travelers has plead that at least $1,442,686.03 were comprised of bonded contract funds held in trust by Krahl. Likewise, the funds were deposited into Krahl's account from outside sources such as the University of Colorado and Bolingbrook MOB, LLC. Accordingly, there appears that the alleged trust funds are identifiable specific chattel.

In addition to establishing that the deposits constitute "specific chattel", "[i]t must be shown that the money claimed, or its equivalent, at all times belonged to the plaintiff and that the defendant converted it to his own use." *In re Thebus*, 483 N.E.2d at 1261. Krahl had an unconditional right to the allegedly wrongfully setoff funds as a trustee. *Safeco v. Wheaton Bank and Trust Co.,* No. 07 C 2397, 2008 WL 216396, at *2 (N.D. Ill. Jan. 24, 2008) ("[W]hen a trustee deposits trust funds into a bank account, only the trustee, not the beneficiary, has an immediate and unconditional right to possess the amount deposited." (Citing *Katz*, 491 N.E.2d at

9

1159)). Plaintiff is a subrogee to Krahl's rights as trustee. As such, Travelers can assert Krahl's right to the specific amounts which were to be held in trust for the project's subcontractors.

### D. Travelers States A Claim For Imposition of Constructive Trust In Count VII.

A constructive trust is a "remedial device" which allows a court to declare a person, who is wrongfully in possession of property, a constructive trustee. *Suttles v. Vogel*, 533 N.E.2d 901, 904 (Ill. 1988). As a constructive trustee, that person has an immediate duty to transfer title and possession of the property to the true owner. *Id*. A prerequisite to the imposition of a constructive trust is some form of wrongdoing. *Id*. at 905. A complaint must make "specific allegations of wrongdoing" to support a claim for a constructive trust. *Id*. Allegations of wrongdoing may take the form of "fraud, breach of fiduciary duty, duress, coercion or mistake." *Id*. Fifth Third argues that Travelers has not plead facts sufficient to sustain its claim.

A bank is chargeable as a constructive trustee when it sets off a depositor's assets with knowledge that such assets were to be held in trust by the depositor for a third party. *Gluth Bros. Construction, Inc. v. Union Natl. Bank*, 518 N.E.2d 1345, 1352 (Ill.App.Ct. 1988). A constructive trust is not an appropriate remedy in the absence of actual knowledge. *Safeco*, 2008 WL 216396, at *6. Here, Plaintiff alleges that Fifth Third had actual and/or constructive knowledge that all payments received for any contract were to be held in trust as trust funds for the payment of all obligations that Krahl was liable for under any bond, and that the monies that Fifth Third setoff were in whole or part trust funds held by Krahl for the benefit of its various subcontractors. Travelers alleges that Fifth Third knew such information "based upon its close scrutiny of and dealings with Krahl Construction and other contractors, as it is universally known in the banking and construction industries." Travelers has plead that Fifth Third had actual, constructive and/or industry custom knowledge regarding the funds allegedly held in trust.

10

Accordingly, I find that Travelers has sufficiently stated a claim for imposition of constructive trust.

**E. Travelers Does Not State A Claim for An Accounting In Count VI.**

An accounting is an equitable remedy, and therefore the court has broad discretion to determine whether such a remedy is appropriate. *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985). To obtain an accounting, a claimant must establish the absence of a remedy at law and either (1) the existence of a fiduciary relationship between the plaintiff and the person required to account, (2) the need for discovery, (3) fraud, or (4) the existence of mutual accounts which are of a complex nature. *3Com Corp. v. Electronics Recovery Specialists, Inc.*, 104 F.Supp.2d 932, 941 (N.D.Ill. 2000).

Here, Travelers maintains its claim for an accounting asserting that it has no adequate remedy at law to fully ascertain the true extent of wrongfully setoff bonded contract funds. Additionally, it cites the need for discovery and mutual accounts of a complex nature. I disagree. Travelers has made little showing of why it is unable to ascertain the true extent of the funds allegedly wrongfully setoff by Fifth Third, particularly given its status as a surety subrogated to the rights of Krahl and Krahl's creditors. Additionally, even if no adequate remedy at law did exist, given that this case will not be dismissed in its entirety, there will be an opportunity for additional discovery as to this matter. Finally, though Travelers has asserted that the accounts in question are complex, an accounting is inappropriate unless the accounts are "so complicated that a special master and jury could not adequately assess damages." *TMF Tool Co. v. H.M. Financiere & Holding, S.A.*, 689 F.Supp. 820, 825 (N.D.Ill. 1988). This does not present such a case. Accordingly, count VI is dismissed.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted as to count VI and denied as to counts V and VII.

ENTER:

James B. Zagel
United States District Judge

DATE: December 23, 2010